PD-1133-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/30/2015 7:14:12 PM
Accepted 11/2/2015 12:41:00 PM
ABEL ACOSTA
CLERK

NO. PD-1133-15

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## AT AUSTIN

-------------------------------------------------------------------

## NO. 01-14-00345-CR

## IN THE COURT OF APPEALS FOR THE

## FIRST DISTRICT OF TEXAS

## AT HOUSTON

-------------------------------------------------------------------

**BRANDON DERRAIL EVANS,**          **APPELLANT**

**V.**

**THE STATE OF TEXAS,**          **APPELLEE**

-------------------------------------------------------------------

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
-------------------------------------------------------------------

FILED IN
COURT OF CRIMINAL APPEALS

November 2, 2015

ABEL ACOSTA, CLERK

**Winston E. Cochran, Jr.**
Attorney at Law
Texas Bar No. 04457300
P.O. Box 2945
League City, TX 77574
Tel. (713) 228-0264
E-mail:winstoncochran@comcast.net
Counsel for Appellant,
Court-appointed on appeal.

**ORAL ARGUMENT REQUESTED**.

## STATEMENT REGARDING ORAL ARGUMENT

The appellant requests oral argument because this cause presents an important question about the standard for sufficiency of the evidence.

## LIST OF INTERESTED PARTIES

| | |
|---|---|
| Brandon Derrail Evans | Appellant |
| M. Fox Curl<br>1810 Decatur<br>Houston, TX 77007 | Appellant's counsel at trial |
| Winston E. Cochran, Jr.<br>P.O. Box 2945<br>League City, TX 77574 | Appellant's counsel on appeal |
| The State of Texas | Appellee |
| Jack Roady<br>Galveston County District Attorney<br>600 59th Street<br>Galveston, TX 77551 | Counsel for the Appellee |
| Megan Jones<br>Jennifer Ott<br>Rebecca Klaren | Assistant District Attorneys |
| Hon. David Garner | Visiting Judge, 212th District<br>Court, Galveston County, Texas |

i

# TABLE OF CONTENTS

Statement Regarding Oral Argument     i

List of Interested Parties     i

Table of Authorities     iii

Statement of the Case     1

Statement of Procedural History     2

Question Presented for Review     2

> Did the Court of Appeals err in its interpretation and application of the "affirmative links" concept in holding that the evidence was sufficient?

Argument     3

    A.     The Factual Background     3

    B.     The "Affirmative Links" Framework     8

    C.     The Fallacy of Failing to Give Absent "Links" Weight     10

    D.     Application to This Cause     12

Prayer for Relief     15

Certificate of Compliance     15

Certificate of Service     16

Appendix: Opinion and Judgment of the Court of Appeals

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Brown v. State*, 911 S.W.2d 744 (Tex. Crim. App. 1995)                      9

*Burrell v. State*, 445 S.W.3d 761(Tex. App. – Houston
    [1st Dist.] 2014, pet. ref'd)                                        8-10, 12

*Deshong v. State*, 625 S.W.2d 327 (Tex. Crim. App. [Panel Op.] 1981)        9

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006)                    9, 12

*Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991)                      9

*Gilbert v. State*, 874 S.W.2d 290 (Tex. App. – Houston
    [1st Dist. 1994, pet. ref'd)                                             9

*Haynes v. State*, 475 S.W.2d 739 (Tex. Crim. App. 1971)                     9

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)   11

*Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000)                    11

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005)                 8

*Wiersing v. State*, 571 S.W.2d 188 (Tex. Crim. App. 1978)                   9

**Constitutional Provisions, Statutes, Rules**

TEX. PENAL CODE §46.04                                                       1

U.S. CONST. Amend. XIV                                                      11

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW the appellant, Brandon Derrail Evans (hereinafter "Evans"), through the undersigned counsel, and respectfully requests that this Court grant discretionary review of the decision of the Court of Appeals for the First District of Texas, for reasons set forth as follows.

## STATEMENT OF THE CASE

Evans was indicted for Possession of a Firearm by a Felon, in violation of TEX. PENAL CODE §46.04 (CR-7).[1] A jury found Evans guilty as charged (CR-119). Punishment was assessed at confinement for five years in the Texas Department of Criminal Justice, Correctional Institutions Division (CR-125, RR V-19). Evans gave timely notice of appeal (CR-134).

On appeal Evans presented one point of error, challenging the sufficiency of the evidence to show that he knowingly possessed a firearm which was located on the floor of a vehicle in which he was seated. The Court of Appeals affirmed the judgment of the district court in a memorandum opinion. on July 30, 2015.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its decision and delivered its opinion on July 30, 2015. No motion for rehearing was filed. Pursuant to a second extension of time,

---

[1] The clerk's record is designated "CR" herein. The reporter's record is designated "RR," with Roman numerals for volume numbers.

Evans' petition for discretionary review is due on or before October 30, 2015.

## QUESTION FOR REVIEW

This petition presents one question for review:

Did the Court of Appeals err in its interpretation and application of the "affirmative links" concept in holding that the evidence was sufficient?

## ARGUMENT

A stipulation established that Evans had a prior felony conviction (RR IV-15), which made it illegal for Evans to knowingly possess a weapon at the time of this incident. The sole question presented to the Court of Appeals was whether the evidence proved such possession. Evans contends that the Court of Appeals erred in its analysis. The real issue, however, is the standard applied, rather than the Court of Appeals' particular evaluation of the facts. This cause is a good example of the difficulty which still arises because of the difficulty of applying an "affirmative links" approach to cases based on possession of weapons (as in this cause) or contraband (as in cases continually arising in every criminal court in Texas).

### A. Factual Background

Texas City Police officer Randall Johnston testified that on May 17, 2013 he was at the Lakewood Apartments in Texas City, where he lived as a "courtesy officer"(RR IV- 18-19). At about 10 p.m. on that day he was at home when he was

2

dispatched to meet another officer in the parking lot "who encountered several suspicious persons" in order to determine whether Johnston could recognize any of the suspects (RR IV- 22, 25). Johnston did not recognize the people or the vehicle they were in, and he was confident that none of them were residents of the complex (RR IV- 23, 25). He acknowledged on cross-examination, however, that the parking lot was not gated, and it was permissible for residents to have friends come and visit (RR IV- 23, 25).

Corporal Derrick Grandstaff of the Texas City Police testified that he was dispatched to the Lakewood Apartments at around 10 p.m. (RR IV-30). The only information he was given by the dispatcher was that an anonymous caller reported that "there were black males on the property there that did no t belong there" (RR IV-30). Since Johnston, the courtesy officer, had not mentioned placing an anonymous call, it must have come from someone else. That person was never identified, let alone being shown to be someone with knowledge as to whether or not other individuals "belonged" at the complex. In cross-examination it was established that the caller did not indicate that the suspects were engaged in any assault, burglary of vehicles, or other criminal activity, nor was there a report that the suspects were intoxicated (RR IV -64).

Grandstaff drove through the parking lot using his "alley lights" – the

3

spotlights on each side of the patrol car which can illuminate an alley or other place to the side of the patrol car (RR IV- 31-32). Backed against a fence was a Crown Victoria with a black male sitting in the front passenger seat (RR IV-33). That person was later identified as Chris Santiago. Grandstaff said Santiago "looked at me, and he looked to the – he looked to the back, and then he kind of looked down" (RR IV-33). Then Grandstaff saw two black males in the rear seat raise their heads and duck down (RR IV-33). As Grandstaff shone the spot light on the car, the two men in the back seat again raised and lowered their heads (RR IV-33). Evans was the person in the back seat on the driver's side (RR IV-38). Why it was suspicious for any of the three men to not continue to look into a bright spotlight was not explained. In fact, Grandstaff said the one of the reasons for shining the spotlight at someone was to gain the "tactical advantage" of "blind[ing] them a little bit" and making the suspects "disoriented" (RR IV- 34, 66). In other words, the average, innocent person would not want to look into the light. There also was no indication that it was unusual, let alone illegal, for black people to be in Texas City at night.

Grandstaff said he could not tell if the men in the car were "trying to conceal something," such as weapons or contraband (RR IV-36). Grandstaff also mentioned that this area, as well as neighboring La Marque, had been plagued by recent convenience store robberies (RR IV -36), but there was zero evidence indicating that

4

a convenience store had just been robbed or that a Crown Victoria was observed at the scene of any robbery. Grandstaff also mentioned the prevalence of vehicle burglaries (RR IV -36), although there was no evidence – not even from the anonymous tip – that a car had been burglarized at the Lakewood complex that evening or that the suspicious men were seen with burglary tools such as crowbars, screwdrivers, or wires.

Grandstaff saw a man, later identified as Robert Terry, step out of the right rear passenger door of the Crown Victoria. Still waiting for another officer to arrive, Grandstaff ordered that man and the others to remain in the vehicle (RR IV-34). As Grandstaff walked toward the vehicle, Grandstaff could smell the odor of marijuana coming from the vehicle (RR IV-36). That odor gave Grandstaff probable cause to search the vehicle.

Officer Jason Clement arrived, and Grandstaff told Clement to remove Evans from the car. Clement told Grandstaff that there was a gun on the left rear floorboard (RR IV-40). It was a chrome or steel .357 revolver which was "partly concealed" by a "foam type glove" and a bag, as depicted in the photographs admitted as SX-5, SX-6, and SX-7 (RR IV- 41-42). The serial number on the gun had been filed off, suggesting that it either was stolen or was intended for criminal use (RR IV-42). Grandstaff found some hollow-point bullets inside the revolver (RR IV-56).

Grandstaff found a sweat shirt with a hoody on the right side of the rear passenger seat, and in a pocket of the shirt he found a .380 semiautomatic handgun (RR IV- 42, 49). Grandstaff also found a black hoody with a TCU Horned Frog logo, along with two pairs of gloves, in the front passenger area (RR IV- 43, 50). On the front floorboard there was a marijuana " roach" (a small cigarette) and a Ziploc bag that appeared to contain synthetic marijuana (RR IV-43). In the front passenger area of the car was a ski mask (RR IV-51).

Grandstaff was asked about the possibility of using identifiable deoxyribonucleic acid (DNA) to determine who had handled either of the guns. This w as not done because there was a Texas Department of P ublic Safety laboratory policy of only analyzing DNA specimens for homicides, sexual assaults, burglaries, and some other property crimes, unless "special permission" is obtained from the DPS lab by the local agency (RR IV- 57-58). In this instance, even though the spectre of a robbery gang was raised by some of the testimony, "nothing was given to ID to send off to DPS" (RR IV-58). Fingerprint analysis could be done in-house by the Texas City Police Department, but Grandstaff did not know whether the gun had been analyzed to see if identifiable fingerprints could be obtained (RR IV- 58-59). No fingerprint evidence was introduced at trial.

Grandstaff eventually got information concerning ownership of the Crown

Victoria. It belonged to a woman in La Marque named Sharlene White (RR IV- 61, 70). Grandstaff did not know whether she was related to Evans (RR IV-71). Grandstaff acknowledged that it was possible that the gun found near Evans belonged to White, although that would not be the usual place for a person to place a gun in her own car (RR IV-75). Grandstaff stated that Ms. White subsequently contacted the police, saying that her son, Germane White, said he had parked the car and gone to a nearby Little Chief convenience store, but when he came back the car was gone (RR IV-70).

Grandstaff further conceded during cross-examination that he did not know how long Evans had been in the Crown Victoria (RR IV-72). Grandstaff never saw a gun in Evans' hand (RR IV-74). Grandstaff saw Evans bend down but could not say that he actually saw Evans put a gun on the floorboard (RR IV-74).

Officer Jason Clement testified that he removed Evans from the Crown Victoria through the left rear door. When Evans had stepped out of the car, Clement did not notice anything inside the vehicle (RR IV-85). After placing Evans in a police car, Clement returned to the Crown Victoria. The left, rear door w as still open, and at that point Clement "observed a silver object that was slightly wrapped in a black jacket" (RR IV-85). He then focused his flashlight directly on the object and "was able to identify that object as a silver revolver pistol," specifically the pistol

7

depicted in SX-7 (RR IV-85). On cross-examination Clement reiterated that he did not see the pistol when he first took Evans out of the car, but he was able to see it with the aid of a strong flashlight (RR IV-87). Like Grandstaff, Clement never actually saw Evans handling the pistol (RR IV-88).

## B. The "Affirmative Links" Framework

In an appeal from a conviction for possession of contraband, whether it be narcotics or another item which is prohibited under certain circumstances, the sufficiency of the evidence is evaluated under the doctrine of "affirmative links." The Court of Appeals had discussed this doctrine in *Burrell v. State*, 445 S.W.3d 761(Tex. App. – Houston [1st Dist.] 2014, pet. ref'd) in the analogous context of possession of a controlled substance:

> To prove unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised control, management, or care over the substance and that he knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Regardless of whether the evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Id.* at 405-06. This "affirmative links" rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs."*Id.* at 406 (internal quotation marks omitted). Thus "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Deshong v. State*, 625 S.W.2d 327, 329

(Tex. Crim. App. [Panel Op.] 1981)(citing *Wiersing v. State*, 571 S.W.2d 188, 190 (Tex. Crim. App. 1978).

Obviously Evans was not in exclusive possession of the vehicle, so the use of "affirmative links" was appropriate in this cause.

In *Brown v. State*, 911 S.W.2d 744 (Tex. Crim. App. 1995), this Court outlined the history of the "affirmative links" doctrine, starting with *Haynes v. State*, 475 S.W.2d 739 (Tex. Crim. App. 1971). *Brown* explained that the doctrine started out simply as the concept of a logical "link" rather than a list. The problem with merely stating the concept, however, has been to maintain an appellate standard which provides some protection against unjust convictions while at the same time not invading the province of the jury. *Brown* further pointed out that, at the time of *Haynes*, the appellate standard of excluding "outstanding reasonable hypotheses" other than guilt was in place, that standard not disappearing until *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991).

A list of "links" gradually developed as a practical guide. *Burrell*, drawing upon *Evans v. State*, 202 S.W.3d 158, 162, n. 12 (Tex. Crim. App. 2006) and *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App. – Houston [1st Dist. 1994, pet. ref'd), counted fourteen of them. *Burrell* pointed out that the existence of a list does not mean that the question is answered by counting such links: "It is not the number of

9

links that is dispositive, but rather, the logical force of all the evidence, both direct and circumstantial." As Evans will explain below, however, the idea of considering unproven links is not antithetical to looking at the "logical force of all the evidence."

## C. The Fallacy of Failing to Give Absent "Links" Weight

Three main considerations call for this Court to examine whether, and how much, the absence of particular "links" should count in sufficiency review. First, notwithstanding the cold welcome given in the last few decades to the concept of "outstanding reasonable hypotheses," that concept is nevertheless consistent with logic. In formal logic and the scientific application of logic, the exclusion of a conclusion other than that desired by the proponent is a requisite step in proof. Suppose, for example, that a baggie with a green plant substance is found by the police. It wold be a possible hypothesis that the substance is either marijuana, or "kush" (fake marijuana), or oregano, or clippings from someone's lawn. The conclusion that the baggie actually contains marijuana (as opposed to the others) cannot be reached, as a matter of valid logic, without excluding the others, or at least showing that there is a blend containing some marijuana. Without belaboring examples, the point is that "the *logical* force of all the evidence" (emphasis added) actually *requires* exclusion of reasonable hypotheses other than the conclusion desired by the proponent. Other discipines recognize that. If modern courts want to

quarrel with a doctrine recognized by law scholars in days of yore, attack the law school, but for heaven's sake do not quarrel with the departments of science, mathematics, and philosophy.

Second, as an old expression states, "a deal is a deal." *Geesa* was a deal: the abandonment of the appellate standard of considering reasonable alternative hypotheses was a trade-off with the submission of a jury instruction on reasonable doubt. The half of the deal disliked by prosecutors was rejected in *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000). If contract principles and basic fairness matter, should not *Geesa* be unwound entirely? If the consideration of reasonable alternative hypotheses is rightfully restored to sufficiency review, then the presence or absence of *all* affirmative links should be considered, for absent "links" often are suggestive of reasonable alternative hypotheses.

Third, the requirement of proof beyond a reasonable doubt (or what appellate courts call "sufficient" evidence) is a component of due process of law under U.S. CONST. Amend. XIV. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It exists to assure that innocent persons are not convicted and penalized merely because the circumstances of their conduct raise a suspicion of wrongdoing. One of the best ways to show that valid suspicion in a given situation still does not rise to the level of proof beyond a reasonable doubt is to look for other

11

indicators of actual criminal behavior. In their absence, an officer's suspicion might be valid but a jury's guilty verdict might not. If the absence of many "links" did not matter, why not just convict upon one "link?" That would amount to convicting upon suspicion, *i.e.* the fact which drew the officer's attention initially.

In this cause the Court of Appeals discussed the "links" supporting conviction, using this Court's list in *Evans* rather than the list in *Burrell* (Mem. Opin., p. 6). The Court of Appeals followed current doctrine by eschewing consideration of those "links" which were notably absent (Mem. Opin., pp. 9-10). It did so even though there was evidence from the State's witnesses (not defense witnesses) suggesting that Ms. White owned the vehicle, her son was operating the vehicle, the visibility of the gun at night was doubtful, and no effort was made to produce forensic evidence that would confirm or refute the belief that Evans had touched the gun. In this instance, the Court of Appeals put a good effort into a bad analytical system, and an erroneous conclusion was reached. It is this Court's job to fix flaws in that analytical system.

### D. Application to This Cause

Since the Court of Appeals did not utilize the standard which ought to apply, the likely disposition in this cause, if this Court agrees with Evans, would be a remand. It may be premature for this Court to be concerned with the specifics of what "links" were or were not established. But to the extent it matters, Evans offers a brief

outline, using the *Burrell* list because it shows more factors cutting in favor of Evans.

Evans agrees with the Court of Appeals that the first and third "links" from the 14-factor *Burrell* list, *i.e.* presence and proximity, were established with respect to the .357 (Mem. Opin., p. 7).[2] Evans contends, however, that other "links" go in his favor:

> Link 2 – Plain view: The officer needed a light to see the gun. There was no proof that Evans could see it any better without a light.
>
> Link 4 - "Under influence," *i.e.* use: This weapons counterpart to a drug "link" would examine evidence of use or handling by Evans, and there was no such evidence.
>
> Links 5 and 10 – "possession of other contraband" and "presence of other contraband and paraphernalia:" No such evidence against Evans. There were some bullets inside the gun, but unless Evans knowingly possessed the gun, he did not knowingly possess bullets inside the gun. The Court of Appeals thought it significant that the serial number had been filed off the gun (Mem. Opin., p. 9). That begs the question whether Evans saw the gun at all, let alone examining it for a serial number, and there was no evidence whatsoever that Evans was the person who filed off the number. Someone had some marijuana and fake marijuana, but there was no proof that Evans did. As to the hoodies and the mask, they possibly could have been criminal instruments in a robbery, but there was no evidence that a robbery or attempted robbery was in progress.
>
> Link 6 – Incriminating statements: Evans made none.
>
> Link 7 – Attempted flight: Terry got out of the car but Evans did not.

---

[2] The Court of Appeals correctly focused on the .357, rather than examining on whether Evans should be responsible for Terry's gun.

Link 8 (designated "Factor 4" in the opinion) – Furtive gestures: Evans did bend down after the bright "alley light" was aimed at him, but Grandstaff said this technique was used precisely because it typically was "disorienting." Even an innocent person does not want a spot light shining into his eyes. Grandstaff could not see what, if anything, Evans did with his hands when he had bent down.

Link 9 – Odor of contraband: Not applicable in a weapon case. A weapon might smell if it had been fired, but there was no evidence of firing.

Link 11 – Ownership or possession of place where gun found: Evans did not own the car, and Grandstaff testified that the owner's son was reportedly in possession and control of the car during that period of time.

Link 12 – Whether the place where the firearm was found was enclosed: The firearm was "enclosed" within the car, but not in a holster, box, *etc.* in any way linked to Evans.

Link 13 – Whether a large amount of cash was present: Assuming *arguendo* this even applies to firearms cases in general, there was no such evidence here.

Link 14 – Defendant's conduct indicating "consciousness of guilt:" There was no evidence that Evans engaged in any "conduct" other than ducking down when the bright line was cast upon the car and getting out of the car when ordered to do so by the police.

Thus the overwhelming preponderance of the possible "links" favored acquittal. Surely this should matter in a sufficiency review.

The Court of Appeals did note other factors which it believed were incriminating, but they are not convincing as to proof of possession. For example, the

14

fact that it was "late at night, and the passengers of the car were neither apartment residents nor visitors" (Mem. Opin., p. 9) says nothing about whether Evans knowingly possessed the weapon.

## PRAYER FOR RELIEF

Wherefore Evans prays that discretionary review be granted.

Respectfully submitted,

*/s/ Winston E. Cochran, Jr.*
Winston E. Cochran, Jr.
Attorney at Law
Texas Bar No. 04457300
P.O. Box 2945
League City, TX 77574
Tel. (713) 228-0264
E-mail:winstoncochran@comcast.net

Counsel for Appellant,
Court-appointed on appeal.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing petition for discretionary review was computer-generated, using 14-point font for text and 12-point font for footnotes. Omitting the portions specified in TEX. R. APP. PROC. 9(i)(1), the petition contains 3441 words.

*/s/ Winston E. Cochran, Jr.*
Winston E. Cochran, Jr.

15

## CERTIFICATE OF SERVICE

I certify that copies of this petition have been served on counsel for the State electronically or by mail at the following addresses on October 30, 2015:

Galveston County District Attorney's Office
Appellate Division
Attention: Rebecca Klaren
600 59th Street
Galveston, TX 77551

Hon. Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, TX 78711-3046

/s/ *Winston E. Cochran, Jr.*
Winston E. Cochran, Jr.

# APPENDIX

## Opinion and Judgment of the First Court of Appeals

Opinion issued July 30, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00345-CR

———————————

**BRANDON DERRAIL EVANS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Case No. 13CR1338

## MEMORANDUM OPINION

A jury convicted appellant Brandon Derrail Evans of unlawful possession of a firearm by a felon, *see* TEX. PENAL CODE § 46.04(a), and the court assessed punishment at five years in prison. *See id.* § 12.34 (third-degree felony

punishment). In a single issue on appeal, Evans contends that the evidence was insufficient to support the jury's verdict. We affirm.

## Background

At approximately 10:00 p.m. on May 17, 2003, Texas City Police Department Corporal D. Grandstaff responded to an anonymous tip about three trespassers in the parking lot of an apartment complex, which was in an area that recently had experienced numerous convenience store robberies and automobile break-ins. The trespassers were identified only as "black males" and "suspicious persons" who did "not belong there." Corporal Grandstaff drove through the parking lot with his "alley" lights activated, and he saw three black men sitting in a parked car. One man was in the front passenger seat, and two men were in the back seat. Nobody was in the driver's seat. Appellant Brandon Derrail Evans was seated in the back, behind the driver's seat.

The man in the front passenger seat looked at Corporal Grandstaff and then turned to look toward the floorboard. The two men in the back were bent down, but they "popped up" and then bent down again twice in quick succession. Corporal Grandstaff later advised another officer that the men in the back had been reaching toward the floorboard.

Corporal Grandstaff contacted Texas City Police Officer R. Johnston, who lived at the apartment complex and served as a "courtesy officer," monitoring

2

suspicious activity when it arose. Although Officer Johnston recognized all the apartment residents by sight, when he looked at the men in the car he did not recognize them.

One passenger began to get out, but Corporal Grandstaff ordered him to get back in the car. Because he smelled marijuana as he approached, Corporal Grandstaff began to detain all three passengers so that he could safely search the car. Texas City Police Officer J. Clement then arrived to assist in detaining the men and searching the vehicle.

Officer Clement removed Evans from the car and asked if he lived at the apartment complex. Evans responded that he did not live there, but his uncle did. However, Evans could not identify his uncle by name or say where his apartment was located.

Officer Clement spotted a gun on the floorboard where Evans's feet had been. The gun was partially hidden by a glove and a bag, but the officer testified that he could see it clearly with only the aid of a flashlight. At trial, he described the gun as a chrome or steel .357 revolver, which had a filed-off serial number and which was loaded with "five hollow .38 special rounds."

Upon searching the rest of the car, the policemen also found several pairs of gloves, a ski mask, and two hooded sweatshirts. One of the hooded sweatshirts was found on the back seat on the passenger side. In the pocket of this sweatshirt was

another handgun. In addition, the officers found a "marijuana roach" on the front floorboard and a "dime-sized or quarter-sized Ziploc baggy that appeared to have synthetic marijuana inside."

Evans was charged with the unlawful possession of a firearm by a felon. At trial, he stipulated that he had previously been convicted of a felony offense and that it had been less than five years since his release from confinement for that offense.

Officer Grandstaff testified that he determined that the owner of the car was Sharlene White, who told him that her son Germane had used it that night. Neither Sharlene nor Germane were in the car when the officer approached it in the parking lot. Sharlene said that Germane had been at a convenience store near the apartment complex and that the car had been towed.

The jury found Evans guilty of the charged offense, and the court assessed punishment of five years in prison.

**Analysis**

In a single issue on appeal, Evans contends that the evidence is legally insufficient to support the jury's verdict. In particular, he argues that the evidence was insufficient to link him to the handgun found in the car.

When evaluating a legal-sufficiency challenge, we consider all of the evidence in the light most favorable to the verdict and determine whether any

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The standard is the same for both direct and circumstantial evidence cases. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.–Houston [1st Dist.] 2012, pet. ref'd).

To prove the offense of unlawful possession of a firearm by a felon, the State must show that the accused was convicted previously of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from community supervision, parole, or mandatory supervision, whichever date is later. TEX. PENAL CODE § 46.04(a); *James v. State*, 264 S.W.3d 215, 218 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Evans stipulated that he had been convicted previously of a felony and the fifth anniversary of his release from confinement for that felony had not yet occurred.

"Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to

5

permit him to terminate his control." TEX. PENAL CODE § 6.01(b); *see James*, 264 S.W.3d at 218. "If the firearm is not found on the defendant or is not in his exclusive possession, the evidence must link him to the firearm." *Williams v. State*, 313 S.W.3d 393, 397 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *accord James*, 264 S.W.3d at 218–19. The evidence must establish that the defendant's connection with the contraband was more than fortuitous. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Among the many possible factors that we may consider to evaluate whether the evidence supports a finding that there is a link between the defendant and the contraband are whether: (1) the contraband was in plain view; (2) the defendant was the owner of the location where the contraband was found; (3) the defendant was in close proximity and had ready access to the contraband; (4) the defendant's conduct indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (5) the defendant had a special connection or relationship to the contraband; (6) the place where the contraband was found was enclosed; (7) contraband was found on the defendant; (8) the defendant attempted to flee; and (9) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested. *James*, 264 S.W.3d at 219. It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162. The absence of various links does not

6

constitute evidence of innocence to be weighed against the links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James*, 264 S.W.3d at 219.

On appeal, Evans challenges only the sufficiency of the evidence to prove that he possessed the gun found on the floorboard. He concedes that he was in the car and the gun was within his reach. But he argues that there was no evidence as to how long he had been in the car or whether he could have seen the gun in the dark. He also contends that it was possible that other occupants of the car had access to the gun. Finally, he devotes the bulk of his analysis to explaining why the other links that the Court of Criminal Appeals has identified as relevant are absent in this case.

*Factors 1 and 3: The gun was found in plain view where Evans's feet had been before he got out of the car.* The first and third factors weigh in favor of the jury's verdict. Officer Clement testified that the gun was in plain view—that is, it was not completely hidden in a bag or completely obscured by other objects placed on top of it. In addition to his testimony, two photographs of the floorboard as the officers found it were entered into evidence at trial. The jury was free to rely on both the testimony and the photographic evidence to determine that the gun was visible. While the jury was free to consider the fact that it was dark and how that may have contributed to whether Evans could see the gun, there was sufficient

evidence upon which the jury could have relied to determine that the gun was in plain view. *See Adames*, 353 S.W.3d at 860; *Wiley*, 388 S.W.3d at 813. Likewise, Officer Clement testified that the gun was located where Evans's feet had been before he got out of the car. This was also depicted in the photographs, which showed the gun on the floorboard behind the driver's seat. Evans does not deny that the gun was within his reach.

*Factor 4: Corporal Grandstaff saw Evans repeatedly ducking and reaching toward the floorboard.* Corporal Grandstaff testified that he had his alley lights on when he entered the parking lot and that he was able to see Evans and the other two men repeatedly duck down and look out the window toward him. He testified that this behavior was unusual and made him suspicious. Officer Clement testified that Grandstaff told him he had seen the men in the car reaching toward the floorboard. Evans contends that his ducking movements could be explained as a response to the shining of the bright alley light toward the car. However, it was for the jury to resolve any such dispute about the significance of the evidence. Because there was evidence upon which the jury could have relied in concluding that Evans made furtive gestures, we conclude that this factor supports the jury's verdict.

*Other circumstantial evidence supports the jury's verdict.* In addition, in this case, the State offered significant other circumstantial evidence upon which the jury could have relied in concluding that Evans's connection to the gun was not

merely fortuitous. *Evans*, 202 S.W.3d at 161. Corporal Grandstaff testified that the apartment complex was in an area that had recently experienced numerous convenience store robberies and automobile break-ins and that there was a convenience store across the street. It was late at night, and the passengers of the car were neither apartment residents nor visitors. There was no connection shown between Evans and the other passengers and the owner of the car, who believed her car had been towed. Although it was a warm night in Galveston County, two hooded sweatshirts, a ski mask, and three pairs of gloves were found in the passenger area of the car. Marijuana, a controlled substance, was found in the car and the odor of it emanated from the car when Corporal Grandstaff approached. Finally, the officers found two loaded handguns in the car. The one that was within Evans's reach was loaded and bore no serial number because it had been filed off. Corporal Grandstaff testified that it is illegal for anyone to possess a firearm with a filed-off serial number. Considering this circumstantial evidence as a whole, the jury could have reasonably concluded that Evans's connection to the gun was not merely fortuitous. *See id.*

Finally, we are not persuaded by Evans's argument that the evidence is insufficient because of the absence of evidence of some of the other links that the Court of Criminal Appeals has previously identified. Our analysis is not one of mathematical computation and the absence of various links does not establish his

innocence. *See Hernandez*, 538 S.W.2d at 13; *James*, 264 S.W.3d at 219. We conclude that a rational jury could have found beyond a reasonable doubt that Evans possessed the gun that was found on the rear floorboard of the car. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Merritt*, 368 S.W.3d at 525. We overrule Evans's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

10



# JUDGMENT

## Court of Appeals

## First District of Texas

NO. 01-14-00345-CR

BRANDON DERRAIL EVANS, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 212th District Court of Galveston County. (Tr. Ct. No. 13-CR-1338).

This case is an appeal from the final judgment signed by the trial court on March 27, 2014. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error. Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered July 30, 2015.

Panel consists of Chief Justice Radack and Justices Higley and Massengale. Opinion delivered by Justice Massengale.